FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

KETHNEY A. WILLIAMS,                )
                                    )
                Appellant,          ) D.C. Crim. App. No. 2006-11 and
                                    ) D.C. Crim. App. No. 2006-10
                                    )   Re: Super. Ct. Crim. No. 318/2005
                                    )   and Super Ct. Crim. No. 317/2005
                                    )
        v.                          )
                                    )
GOVERNMENT OF THE VIRGIN            )
ISLANDS,                            )
                                    )
                Appellee.           )
_____ )
AYALA R. CORNELIUS,                 )
                                    )
                Appellant,          )
                                    )
                                    )
        v.                          )
                                    )
GOVERNMENT OF THE VIRGIN            )
ISLANDS,                            )
                                    )
                Appellee.           )
                                    )
_____ )

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: The Honorable Rhys S. Hodge
Considered: June 19, 2009
Filed: March 23, 2011

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 2

**BEFORE:** **CURTIS V. GÓMEZ,** Chief Judge of the District Court of the
Virgin Islands; **RAYMOND FINCH,** Judge of the District Court of the
Virgin Islands; and **DARRYL DEAN DONOHUE, SR.** Presiding Judge of
the Superior Court, sitting by designation.


**ATTORNEYS:**

**Nancy D'Anna, Esq.**
St. John, U.S.V.I.
     *For Appellant Kethney Williams.*

**Debra S. Watlington, Esq.**
St. Thomas, U.S.V.I.
*For Appellant Ayala Cornelius.*


**Vincent Frazer, Esq.**
St. Thomas, U.S.V.I.
     *For the Appellee.*

---

**MEMORANDUM OPINION**

---


     Following a jury trial conducted in the Superior Court of

the Virgin Islands, Division of St. Thomas and St. John (the

"Superior Court") Kethney Williams ("Williams") and Ayala

Cornelius ("Cornelius") were convicted of unauthorized possession

of a sawed-off shotgun.  Each appeals his conviction.  In light

of the similar legal and factual issues raised in their appeals,

we will consolidate their appeals. For the reasons given below,

we will reverse both convictions.

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 3

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

On the night of July 22, 2005, Williams was walking to his
mother's house outside Cruz Bay, St. John, U.S. Virgin Islands
with his friend, Ayala Cornelius ("Cornelius").  They stopped to
smoke a marijuana cigarette.  Cornelius began rolling the
cigarette near a concrete wall surrounding the Coconut Coast
Condominiums.  Williams walked across the street to relieve
himself.  Thereafter, as Williams was walking toward where
Cornelius was standing, a police cruiser pulled up.  Three
officers got out of the vehicle and approached Williams and
Cornelius.  Cornelius told the police that he and Williams "were
just rolling a joint." (Trial Tr. 192, Oct. 18, 2005.)  One of
the officers found a tennis racket bag lying beside the concrete
wall.  The bag contained a fully loaded sawed-off shotgun, a pair
of gloves, and two long-sleeved shirts.  The officers thereafter
arrested Williams and Cornelius.

On August 3, 2005, the People of the Virgin Islands (the
"Government") filed a five-count information against Williams and
Cornelius.  Count One charged Cornelius with unauthorized
possession of a sawed-off shotgun in violation of title 14,

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 4

section 2253(b) of the Virgin Islands Code ("Section 2253(b)").[1]
Count Two charged Williams with unauthorized possession of a
sawed-off shotgun, in violation of Section 2253(b).  Count Three
charged Cornelius with unauthorized possession of ammunition in
violation of title 14, section 2256(a) of the Virgin Islands Code
("Section 2256(a)").  Count Four charged Williams with
unauthorized possession of ammunition, in violation of Section
2256(a).  Count Five charged Cornelius with possession of
marijuana in violation of title 19, section 607(a) of the Virgin
Islands Code.

The trial in this matter commenced on Monday, October 17,
2005. On the morning of trial, Count Five of the information was
dismissed on the Government's motion.  Officers Dennis Vanterpool
and Angela Brown of the Virgin Islands Police Department
("VIPD"), who were present when Williams and Cornelius were
arrested on July 22, 2005, testified on behalf of the Government.
Additionally, the Government offered a Wilson brand tennis
racket bag and a sawed-off shot gun, which were admitted into
evidence as Exhibits 1 and 2, respectively.  Officer Vanterpool

---

[1]  Section 2253(b) makes it unlawful for any person, "unless
otherwise authorized by law, [to] ha[ve], possess[], bear[],
transport[] or carr[y] either, actually or constructively, openly
or concealed any . . . sawed-off shotgun, as defined in
subsection (d)(2) and (3) of this section, loaded or unloaded . .
. ."

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 5

testified that Exhibit 1 was the same bag found near the wall on
July 22, 2005.  He also stated that he recognized Exhibit 2 as
the object he found inside the bag.  Officer Brown testified that
she saw the tennis racket bag leaning against a wall near
Cornelius' leg.

Williams and Cornelius testified at trial. Both men
described the events leading up to his arrest on July 22, 2005.
Williams and Cornelius also stated that they had never seen the
bag or the gun before the police found it.

At the conclusion of the trial, Williams moved for a
judgment of acquittal as to the charges against him in Counts Two
and Four of the information. Cornelius moved for a judgment of
acquittal as to Counts One and Three. The trial judge granted
William's motion with respect to Count Four, but denied the
motion with respect to Count Two. The trial judge granted
Cornelius' motion with respect to Count Three, but denied his
motion as to Count One.  On October 19, 2005, the jury found
Cornelius guilty of unauthorized possession of a sawed-off
shotgun charged in Count One. The jury also returned a verdict of
guilty against Williams on the charge of unauthorized possession
of a sawed-off shotgun charged in Count Two.

On November 20, 2005, the Superior Court conducted a
sentencing hearing, during which it adjudged Williams guilty of

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 6

unauthorized possession of a sawed-off shotgun.  The court
sentenced Williams to two years imprisonment, and imposed a fine
against Williams in the amount of $20,000. A judgment and
commitment was entered on January 27, 2006.

On November 30, 2005, the Superior Court conducted a
sentencing hearing, during which it adjudged Cornelius guilty of
unauthorized possession of a sawed-off shotgun.  As a felon in
possession of a shotgun, Cornelius was sentenced to a mandatory
minimum of 15 years plus a $50,000 fine. A judgment and
commitment was entered on January 27, 2006.

Williams and Cornelius timely appealed from their
convictions and sentences.  Williams raises the following issues:
(1) whether the Government presented sufficient evidence at trial
to sustain Williams' conviction for unauthorized possession of a
sawed-off shotgun; (2) whether the Superior Court abused its
discretion in denying Williams' motion to exclude the Test-Fire
Report; (3) whether the Superior Court abused its discretion in
admitting the St. Thomas Certificate and the St. Croix
Certificate into evidence; and (4) whether the sentence and fine
imposed on Williams were unconstitutional.  Cornelius raises the
following issues: (1) whether the Government presented
insufficient evidence to support Cornelius' conviction of

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 7

unauthorized possession of a firearm and (2) whether the sentence
and fine imposed on him were unconstitutional.


## II.  <u>JURISDICTION AND STANDARD OF REVIEW</u>

This Court has jurisdiction over appeals of final
judgments and orders of the Superior Court filed before January
29, 2007, the date on which the Supreme Court of the Virgin
Islands was certified as ready to assume such jurisdiction. *See*
Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a;[2] Act No. 6730
§ 54(d)(1) (Omnibus Justice Act of 2005).

We exercise plenary review over the trial court's
conclusions of law. *Saludes v. Ramos*, 744 F.2d 992 (3d Cir.
1984).  Accordingly, constitutional claims are given plenary
review. *Warner v. Gov't of the V.I.*, 332 F. Supp. 2d 808, 810
(D.V.I. App. Div. 2004).  The sufficiency of the evidence
supporting an appellant's conviction is also subject to plenary
review. *See United States v. Taftsiou*, 144 F.3d 287, 290 (3d Cir.
1998); *Castillo v. Gov't of the V.I.*, 48 V.I. 519, 523 (D.V.I.
App. Div. 2006).  "However, we afford the more deferential clear

---

[2]  The complete Revised Organic Act of 1954 is found at 48
U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I.
CODEANN. 73-177, Historical Documents, Organic Acts, and U.S.
Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit.
1).

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 8

error review to [the trial court's] factual determinations."
*Garcia v. Gov't of the V.I.*, 480 V.I. 530, 534 (D.V.I. App. Div.
2006) (citing *Gov't of the V.I. v. Albert*, 89 F. Supp. 2d 658,
663 (D.V.I. App. Div. 2001)); *see also Saludes v. Ramos*, 744 F.2d
992 (3d Cir. 1984).

Reversal may be avoided if trial errors are found to be
harmless. *See* Fed. R. Crim. P. 52(a) (2002) ("Any error, defect,
irregularity, or variance that does not affect substantial rights
must be disregarded.")[3]; *United States v. Hakim*, 344 F.3d 324 (3d
Cir. 2003). Where trial counsel fails to object to an error, we
reverse only if the asserted violation amounts to "plain error."
*See* Fed. R. Crim. P. 52(b) (2002) ("A plain error that affects
substantial rights may be considered even though it was not
brought to the court's attention."); *United States v. Davis*, 406
F.3d 162, 164 (3d Cir. 2005).

## III.   ANALYSIS

## A.   Sufficiency of the Evidence

Williams and Cornelius argue that the Government presented
insufficient evidence at trial to sustain their convictions for

---

[3]   Federal Rule of Criminal Procedure Rule 52(a) is made
directly applicable to the Superior Court by Rule 7 of the Rules
of the Superior Court.

*Williams v. Gov't of the V.I.*, *Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 9

unauthorized possession of a sawed-off shotgun under Section

2253(b).

    In evaluating the sufficiency of the evidence, we are

"required to determine whether the evidence and all reasonable

inferences which may be drawn therefrom, viewed in the light most

favorable to the government as verdict winner, would permit a

reasonable trier of fact to find the defendant guilty beyond a

reasonable doubt of every element of the offense." *Castillo*, 48

V.I. at 523; *see also United States v. Wolf*, 245 F.3d 257, 261

(3d Cir. 2001).  The inquiry requires an "examin[ation] of the

totality of the evidence, both direct and circumstantial." *United

States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003).  "[A] claim

of insufficiency of the evidence places a very heavy burden on an

appellant." *United States v. Gonzalez,* 918 F.2d 1129, 1132 (3d

Cir. 1990) (quotation omitted); *see also Abiff v. Gov't of the

V.I.*, 313 F. Supp. 2d 509, 511 (D.V.I. App. Div. 2004) ("[T]his

Court may overturn the appellant's conviction only when the

record contains no evidence, regardless of how it is weighted,

from which the jury could find guilt beyond a reasonable doubt."

(quotation omitted)).

    To sustain a conviction for a violation of Section 2253(b),

the Government must prove beyond a reasonable doubt that: (1) the

defendant possessed or had under his control a sawed-off

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 10

shotgun;[4] (2) that such possession was without authority of law;

and (3) that the weapon was operable. *See* 14 V.I.C. § 2253(b); 23

V.I.C. § 451(d); *see also United States v. Betancourt*, 116 F.3d

74, 75 (3d Cir. 1997) (listing the elements of a Section 2253(b)

violation).

With respect to the first element, it is clear that Williams

and Cornelius were not found in actual possession of the sawed-

off shotgun.   Therefore, the Government was required to present

sufficient evidence that the defendants constructively possessed

the weapon.

To prove constructive possession, the Government must show

that the defendants knew of the sawed-off shotgun and had "both

the power and the intention . . . to exercise dominion or control

over [it.]" *United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir.

1992); *see also United States v. Xavier*, 2 F.3d 1281, 1289 (3d

Cir. 1993) (explaining that, to prove constructive possession

under Section 2253, "the gun must be . . . under the defendant's

control").   While proximity to the gun is a substantial

consideration in this analysis, *see United States v. Lopez*, 271

_____

[4] A sawed-off shotgun is defined as "any firearm . . .
designed to fire through a smooth bore either a number of ball
shot or a single projectile, the barrel of which is less than 20
inches in length." 14 V.I.C. § 2253(d)(3).   The parties in this
case do not dispute that the weapon in question fell within this
definition.

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 11

F.3d 472, 487-88 (3d Cir. 2001), proximity alone is insufficient
to establish control. *See United States v. Jenkins*, 90 F.3d 814,
818 (3d Cir. 1996).  Indeed, "evidence of knowledge and access
may be . . . inferred from circumstantial evidence, so long as
the circumstantial evidence includes something other than mere
proximity[.]" *United States v. Jameson*, 478 F.3d 1204, 1209-10
(10th Cir. 2007); *see also United States v. Laughman,* 618 F.2d
1067, 1077 (4th Cir. 1980) (explaining that "where other
circumstantial evidence . . . is sufficiently probative,
proximity to contraband coupled with inferred knowledge of its
presence will support a finding of guilt on such charges")
(internal quotations and citations omitted).  "Thus, we look for
certain 'plus factors,' such as 'connection with a gun, proof of
motive, a gesture implying control, evasive conduct, or a
statement indicating involvement in an enterprise' in completing
the inquiry." *United States v. Bellinger*, 284 Fed. Appx. 966 (3d
Cir. July 9, 2008) (quoting *United States v. Booker*, 436 F.3d
238, 242 (D.C. Cir. 2006)).

Here, Williams testified at trial that, on the night of July
22, 2005, he and Cornelius had been walking together when they
stopped near a concrete wall to smoke a marijuana cigarette.
Williams also testified that he was standing approximately ten
feet away from Cornelius when the police pulled up.

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 12

Officer Brown testified that she saw the tennis racket bag "down by [Cornelius'] leg against the wall." (Trial Tr. 52, Oct. 18, 2005.) When testifying at trial, Williams did not respond to a question regarding whether the bag was near Cornelius' foot when the officers arrived. Cornelius testified that when Officer Vanterpool asked who owned the bag, he responded "what bag?" (*Id.* at 165.)

Officer Vanterpool testified that the tennis racket bag was discovered "leaning against the wall between the two defendants." (*Id.* at 130.) He also stated that the sawed-off shotgun was found inside the bag, along with a pair of gloves and two long-sleeved shirts. The Government asserts that Cornelius' proximity to the tennis bag together with what they characterize as the defendants' unconvincing testimony about their lack of knowledge of the bag was sufficient to support an inference of Cornelius' guilt. It also contends that the testimony of Williams and Officer Vanterpool could support the inference that Williams could have gained immediate possession of the gun, and that such inference is sufficient to sustain Williams' conviction. As authority for its contention, the Government relies on *United States v. McKie*, 112 F.3d 626 (3d Cir. 1997).

However, the factual circumstances of *McKie* are very different from the facts at issue in this case. In *McKie*, the

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 13

defendant was driving a car carrying two passengers when he was
stopped for a traffic violation.  The officers arrested the
defendant after spotting a revolver on the back seat of the car,
a machine gun on the front passenger floorboard, and a pistol on
the rear passenger floorboard.  The defendant was convicted of
violating Section 2253(a) and Section 2253(b).  On appeal, the
defendant argued that his convictions could not stand because the
weapons were not under his control, as required by the statute.
The Third Circuit rejected that argument.  It held that the
evidence was sufficient to sustain a finding that the guns were
under the defendant's control based on the testimony of one of
the arresting officers that all the firearms were in plain view
inside the vehicle, which had been described as "subcompact" and
"cramped." *See id.* at 629.  The court explained that such
evidence could support the reasonable inference that the
defendant "knew of and had immediate access to the gun." *Id.*

In *United v. Brunson*, 16 Fed. Appx. 727 (9th Cir. 2001)
(unpublished), the Ninth Circuit upheld a felon in possession of
a firearm conviction where, more similarly to this case, the
firearm was found lying on a sidewalk.  The court reasoned that
"the government presented a good deal of evidence in support of
its theory that [the defendant] brandished the weapon on D
Street, and then discarded it as he fled the encounter in his

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 14

car." *Id.* at 728.  During the trial in *Brunson*, a police officer
testified that he saw the defendant holding "a large, chrome
revolver consistent with the one later found nearby." *Id.*
Another officer testified that he saw the defendant's car turn
onto the street where the gun was found.  Additionally, an expert
testified that "the scrapes and abrasions on the gun were
consistent with it having bounced and slid on a concrete surface,
but not consistent with it having merely been dropped on
concrete." *Id.*  The court found this evidence sufficient for the
jury to conclude beyond a reasonable doubt that the defendant
possessed the gun that was found on the sidewalk. *Id.*

On the other hand, in *United States v. Nevils*, 548 F.3d 802
(9th Cir. 2008), the Ninth Circuit reversed a conviction for
possession of a firearm by a felon because the government failed
to prove possession.  In *Nevils*, police officers were
investigating gang activity in an apartment building when they
encountered the defendant asleep on a couch in one of the units.
"Leaning against [the defendant's] body were two firearms-one on
his lap and another leaning against his leg." *Id.* at 804.  On a
coffee table next to the couch were several items, including bags
of marijuana and ecstasy, a cell phone, and currency.  When
reversing the defendant's conviction, the Ninth Circuit explained
that, although the defendant was alone in the apartment at the

*Williams v. Gov't of the V.I.*, *Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 15

time the guns were discovered, there was no evidence that his

access to the apartment was exclusive. *See id*. at 808.  The court

also emphasized that "the Government did not offer evidence tying

[the defendant] to any of the other personal items in the

apartment," nor did it establish that the defendant exhibited any

suspicious behavior, such as scrambling to hide the guns. *Id*.

Therefore, the court concluded that despite the extremely close

proximity of the defendant to the firearms, the evidence was

insufficient to show that the sleeping defendant had knowledge of

the guns.  Without any other evidence linking the defendant to

the firearms, the court held that no rational jury could find

that he exercised dominion and control over the firearms. *See id*.

at 808-11.

Similarly, in *United States v. Pedro*, 999 F.2d 497 (11th

Cir. 1993), the Eleventh Circuit reversed a conviction for being

a felon in possession of a firearm because the defendant's ties

to the firearm were too tenuous.  In that case, the defendant was

arrested for burglary.  At the scene of the arrest, the police

found a firearm inside a suitcase that was carried by his co-

defendant.  The defendant was convicted of being a felon in

possession of a firearm.  On appeal, the Eleventh Circuit

reversed.  The court explained that "a defendant's mere presence

in the area of [an object] or awareness of its location is not

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 16

sufficient to establish possession." *Id.* at 500-01 (quotation
omitted) (alteration in original).  It found that, even assuming
that the defendant participated in the alleged burglary, "there
was no evidence whether [the defendant] helped pack the suitcase
or could have known that the closed, hardcover suitcase contained
a firearm." *Id.* at 501.  Accordingly, the court concluded that
the evidence adduced against the defendant constituted "no more
than intuition," and was therefore insufficient to support a
finding of constructive possession. *See id.* (quotation omitted).

In stark contrast to the close quarters of the car where the
weapons were found in *McKie,* the evidence presented during the
Government's case-in-chief showed that the gun was discovered
outside, on the ground, near a public street. Additionally, the
shotgun in this case was not openly visible, but rather was
concealed inside a tennis racket bag.

Furthermore, the Government did not produce any evidence
that either Williams or Cornelius was ever seen brandishing the
shotgun, carrying the bag, or fleeing from the scene, as in
*Brunson.* The Government also has not presented any other evidence
that either defendant had any knowledge of, or connection with,
the bag or the gun.  The Government did not offer any proof that
the defendants had a motive to commit any crime, or that they

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 17

demonstrated evasive conduct or engaged in any other gesture implying control of the gun.

The presence of the two shirts in the bag adds little to the evidence against the defendants. Such evidence could arguably suggest that two people were involved in the possession of the shotgun. However, the Government presented no evidence linking either Williams or Cornelius to the shirts or any other items found in the bag in this case.

Viewed in the light most favorable to the Government, the evidence adduced during the Government's case-in-chief could support the inference that the sawed-off shotgun in this case was found within close proximity to the location where Williams and Cornelius were arrested. However, proximity alone is insufficient to support the reasonable inference that the defendants had knowledge of, and access to the gun. *See Jameson*, 478 F.3d at 1209-10 (explaining that proximity cannot support an inference of knowledge and access).

After the Superior Court denied Williams' and Cornelius' motions for a judgment of acquittal made at the close of the Government's case, each elected to take the stand and testify in his defense. Criminal defendants are not obligated to testify at trial. *Harros v. New York,* 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). A defendant who chooses to present a defense

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 18

runs a risk that doing so will bolster the prosecution's case.
*McGautha v. California*, 402 U.S. 183, 214, 91 S.Ct. 1454, 1471,

28 L.Ed.2d 711 (1971), *reh'g denied by McGautha v. California*,

406 U.S. 978, 92 S.Ct. 2407, 32 L.Ed.2d 677 (1972), *and vacated*

*in part on other grounds sub nom. Crampton v. Ohio*, 408 U.S. 941,

92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) ("[A] defendant whose motion

for acquittal at the close of the Government's case is denied

must decide whether to stand on his motion or put on a defense,

with the risk that in so doing he will bolster the Government

case enough for it to support a verdict of guilty.").   In

electing to put on a case, Williams and Cornelius waived the

right to appeal the denial of their Rule 29 motions made at the

close of the Government's case. *United States v. Feldman,* 425

F.2d 688, 692 (3d Cir. 1970) (explaining that, by introducing

evidence, a defendant waives his Rule 29 motion made at the close

of the government's case).  Therefore, our review of Williams'

and Cornelius' sufficiency claims must take into account all

evidence presented at trial, including that offered by the

defendants. *Id.* ("Where the [Rule 29] motion is waived by the

presentation of evidence by the defendant in his own behalf and

then renewed at the close of all the evidence . . . the

sufficiency of the evidence must be judged upon the record as a

whole).

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 19

Here, Williams testified that he had not seen Cornelius carrying the bag when the two were walking together before they stopped to smoke marijuana. Additionally, both Cornelius and Williams testified that they had no knowledge of the bag or the gun.  Furthermore, the defendants testified that they had never seen the bag or the gun before the police discovered the bag.

In determining the sufficiency of the evidence presented against Williams and Cornelius, we must assess inferences that were permissible in light of their testimony.  As the United States Court of Appeals for the Third Circuit has explained, "there is no question that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt." *United States v. Urban*, 404 F.3d 754, 782 (3d Cir. 2005) (quotation omitted).  However, it is clear that a jury "may not infer defendant's guilt *solely* from any disbelief of his testimony[.]" *Id.* (quotation omitted).   As the Third Circuit has explained, "discredited testimony is not considered a *sufficient* basis for drawing a contrary conclusion." *Id.* (quoting *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 512, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).  Rather, a jury may draw negative inferences from a defendant's testimony only if there is other objective evidence in the record to corroborate such an inference. *See United States v. Brown*, 53 F.3d 312 (11th Cir.

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 20

1995) ("At least where some corroborative evidence of guilt
exists for the charged offense . . . and the defendant takes the
stand in his own defense, the defendant's testimony, denying
guilt, may establish, by itself, elements of the offense.");
*United States v. Eisen*, 974 F.2d 246, 259 (2d Cir. 1992) ("[T]he
jury is free to draw negative inferences from an untruthful
witness's testimony as long as there is affirmative testimony to
supplement or corroborate those negative inferences."); *United
States v. Martinez*, 514 F.2d 334, 341 (9th Cir. 1975) ("Disbelief
of a defendant's own testimony may provide at least a partial
basis for a jury's conclusion that the opposite of the testimony
is the truth. . . . But such belief can provide only partial
support: there must also be 'other objective evidence on the
record which buttresses the fact finder's drawing of the opposite
inference.'").

Here, the jury was free to view Williams' and Cornelius'
testimony that they had never seen the shotgun before as
dishonest. *See United States v. George*, 209 Fed. Appx. 142, 146
(3d Cir. Dec. 13, 2006) ("A jury is free to believe or disbelieve
the testimony of any witness that appears at trial.")
(unpublished).  Furthermore, the jury was entitled to consider
Williams' and Cornelius' testimony as affirmative evidence of
guilt, so long as the other evidence on the record was sufficient

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 21

to corroborate a finding that they possessed the gun. *See Urban*

404 F.3d at 782; *Eisen*, 974 F.2d at 259; *Martinez*, 514 F.2d at

341.  While it is clear that some other corroborative evidence is

required in order for the jury to use a negative inference from

the defendant's testimony as affirmative evidence of guilt, the

United States Court of Appeals for the Third Circuit has not

addressed the issue of exactly how much corroborative evidence is

necessary.  Furthermore, other circuits have yet to articulate a

clear standard with respect to this issue.[5] *See Stallings v.*

*Tansy,* 28 F.3d 1018, 1024 (10th Cir. 1994) (noting that courts

"do not agree . . . on the circumstances that will support such

an inference"); *United States v. Zeigler*, 994 F.2d 845, 850 (D.C.

Cir. 1993) ("There is no principled way of deciding when the

government's proof, less than enough to sustain the conviction,

is nevertheless enough to allow adding negative inferences from

the defendant's testimony to fill the gaps.").

     In *United States v. Zafiro*, 945 F.2d 881 (7th Cir. 1991),

the United States Court of Appeals for the Seventh Circuit held

---

     [5]  The Supreme Court of the United States has explained that
the extent to which a jury may use a negative inference drawn
from a witness' testimony into positive proof is limited: "When
the testimony of a witness is not believed, the trier of fact may
simply disregard it. Normally the discredited testimony is not
considered a sufficient basis for drawing a contrary conclusion."
*Bose Corp. v. Consumers Union*, 466 U.S. 485, 512, 104 S.Ct. 1949,
1966, 80 L.Ed.2d 502 (1984).

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 22

that there was sufficient evidence to sustain the conviction of
the defendant, Zafiro, for participating in, or aiding and
abetting a conspiracy to possess with intent to distribute
cocaine and other illegal drugs.  The evidence presented by the
government showed that law enforcement officers observed two
associates of Zafiro's boyfriend, Martinez, carrying a large box
to Zafiro's apartment.  Inside the box was 55 pounds of cocaine.
Another 20 pounds of cocaine were found in a suitcase in Zafiro's
closet.  Zafiro and Martinez were present in Zafiro's apartment
when the officers discovered the drugs.

The Seventh Circuit commented that, "if all the government
had in the way of evidence against Zafiro were that she and the
drugs were both found in the apartment at the time of the arrest
of her boyfriend and his two associates, a reasonable jury could
not convict her of either conspiracy or aiding and abetting[.]"
*Id.* at 888 (stating that "[g]uilt by association is not a
permissible theory of criminal liability even in the war against
drugs").  The Court, however, noted that expert testimony
regarding the typical aversion of drug dealers toward delivering
large amounts of illegal drugs when innocent bystanders are
present helped support the government's theory.  Furthermore,
Zafiro had testified in her own defense at trial, denying any
knowledge of Martinez' drug dealing.  The Seventh Circuit

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 23

declined to decide whether the evidence presented in the

government's case-in-chief would have been sufficient to sustain

Zafiro's conviction.  Rather, the court found significant that

> [s]he testified; and on the basis of her demeanor
> and the expert testimony the jury was entitled to
> conclude that she knew what was in the suitcase
> and what was coming in the box.  If she knew
> those things she knew that by providing her
> apartment for the storage of these containers she
> was aiding a drug conspiracy involving Martinez.

*Id.*

In *United States v. Tran*, 519 F.3d 98 (2d Cir. 2008), the

United States Court of Appeals for the Second Circuit similarly

upheld a defendant's conviction based upon the evidence presented

in the government's case-in-chief, in conjunction with the

defendant's own testimony.  Tran was convicted of importing and

possessing with intent to distribute methamphetamine, after

agents discovered drugs in a hidden compartment in Tran's rental

car, as he attempted to cross the border from Canada into the

United States.  Tran argued that the evidence presented at trial

was insufficient to sustain his conviction because the government

failed to prove that he knew about the drugs in the hidden

compartment.

The Second Circuit began its analysis of this issue by

acknowledging that "a defendant's sole occupancy of a vehicle

cannot alone suffice to prove knowledge of contraband found

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 24

hidden in the vehicle; corroborating evidence, such as

nervousness, a false statement, or suspicious circumstances, is

necessary to prove this element." *Id.* at 105. Furthermore, the

court noted that Tran testified in his own defense at trial,

denying any knowledge of the drugs in the vehicle. The Second

Circuit concluded that

> Because, in addition to Tran's occupancy of the
> vehicle, the Government introduced corroborating
> evidence of nervousness and suspicious
> circumstances, and because the jury considered
> and rejected Tran's own testimony denying
> knowledge of the drugs that were found,
> sufficient evidence supports the jury's finding
> that Tran knew that those drugs were in the
> vehicle.

*Id.*

On the other hand, in *United States v. Tyler*, 758 F.2d

66 (2d Cir. 1985), the government's evidence against Tyler

consisted mainly of the testimony of Baxter, a detective

who had purchased the heroin in question from Bennett, an

alleged co-conspirator of Tyler.   The Second Circuit

summarized Baxter's testimony as follows:

> According to Baxter's version of the transaction,
> Tyler told Baxter that he would get him some good
> dope. After making some type of inquiry of an
> unidentified individual, Tyler encountered
> Bennett.  Tyler had a brief side conversation
> with Bennett and Bennett then approached Baxter.
> Bennett and Baxter walked away from Tyler and
> consummated their deal.  The two then separated

*Williams v. Gov't of the V.I.*, *Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 25

> and Tyler walked up to Baxter and asked him for
> some change.

*Id.* at 68.

In addition to the evidence presented by the government, the

Second Circuit noted that Tyler had testified at his own trial,

denying any involvement in the above-described sale.  In

discussing the effect of Tyler's testimony, the Second Circuit

recognized that "[o]nce a defendant offers evidence after the

denial of a motion for acquittal at the close of the Government's

case . . . [he] waives any claim as to the sufficiency of the

Government's case considered alone." *Id.* (internal quotations

omitted).  It also noted that "the jury has a right to consider

the defendant's lack of credibility in reaching its verdict." *Id.*

(internal quotations omitted).  However, the court concluded that

> [t]hese two propositions . . . are not helpful to
> the government's case here.  In each of the cases
> in which the jury's disbelief was relied on as a
> factor supporting affirmance, the evidence apart
> from the incredibility of the defendant's
> testimony was sufficient or very close to
> sufficient.  We merely added that the defendant's
> incredible story was another circumstance that
> the jury was entitled to consider.  Here, on the
> other hand, the evidence of an agreement between
> Tyler and Bennett was nonexistent.  Thus,
> although the jury's disbelief of a defendant's
> testimony may supplement already existing
> evidence and help make the evidence in a
> borderline case sufficient, in the instant case
> there was simply no existing evidence to
> supplement.

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 26

*Id.* Thus, the Second Circuit found the evidence insufficient to sustain Tyler's conviction.

Although we note that the case before us is extremely close, we find that the evidence presented by the Government is more akin to that found insufficient in *Tyler*, than that found sufficient in *Zafiro* and *Tran*. Here, the evidence presented in the Government's case-in-chief amounted to no more than Williams' and Cornelius' proximity to the weapon in question. Moreover, the Government presented no corroborative evidence. Here, in contrast, the Government failed to present any other evidence aside from Williams' and Cornelius' proximity to the gun to support an inference that the defendants had any connection with the gun, that they knew of the gun, or had the ability and intention to exercise control over the gun.

Indeed, the Government in this case has adduced no evidence from which the jury could draw a permissible inference that either Williams or Cornelius knowingly had the ability and intention to control the shotgun. Under these circumstances, we find that the evidence of Williams' and Cornelius' mere proximity to the gun is insufficient to corroborate a finding that either defendant possessed the gun, and therefore provide a basis for drawing a negative inference from Williams' and Cornelius' testimony. Thus, Williams' and Cornelius' testimony denying

*Williams v. Gov't of the V.I., Cornelius v. Gov't of the V.I.*
D.C. Crim. App. Nos. 2006-11, 2006-10
Memorandum Opinion
Page 27

knowledge of the gun could not support an inference of guilt

sufficient to overcome the Government's failure to produce

evidence of constructive possession. *Cf. Stallings v. Tansy*, 28

F.3d 1018, 1024) (10th Cir. 1994) (holding that evidence was

insufficient to sustain the defendant's conviction because "[t]he

jury's disbelief of petitioner's testimony could not fill the gap

left by the State's total lack of relevant evidence as to

petitioner's guilty knowledge").


## IV.  CONCLUSION

For the foregoing reasons, we will reverse Williams' and

Cornelius' convictions for unauthorized possession of a sawed-off

shotgun.  An appropriate Order follows.



**Copies (with accompanying Order) to:**

Honorable Curtis V. Gómez
Honorable Raymond Finch
Honorable Darryl Dean Donohue, Sr.

Nancy D'Anna, Esq.
Debra S. Watlington, Esq.
Vincent F. Frazer, Esq.
Kim Bonelli
Olga Schneider
Hilary Jay